IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Shabazz Ahmed, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>Eliza Willis, )<br>Defendant. ) | 1:08cv548 (CMH/TCB) |

## MEMORANDUM OPINION AND ORDER

Shabazz Ahmed, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Nottoway Correctional Center ("NCC") treatment supervisor Eliza Willis, seeking monetary damages for alleged violations of his right to the free exercise of his religion and the prohibition against cruel and unusual punishment. Plaintiff also filed an application to proceed in forma pauperis, which was granted. Liberally construed, plaintiff's complaint suggested the following claims:

> 1. Defendant violated plaintiff's constitutional rights and rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by failing to place plaintiff's name on the "Ramadan Fasting list" after it had been removed, in retaliation for plaintiff's verbal complaints and grievances;
>
> 2. Plaintiff's grievances went unanswered or unresolved;
>
> 3. Plaintiff received a food tray with "spoiled and cold food items that smelled like feces," in violation of the Eighth Amendment.

After initial review of the complaint, a Memorandum Opinion and Order was issued on June 27, 2008, dismissing claims 2 and 3 with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure

1

to state a claim.[1] In addition, it was found that Claim 1 at that juncture failed to state a claim for relief under either the First Amendment or the RLUIPA, but as to that claim plaintiff was allowed an opportunity to provide additional information. Specifically, plaintiff was directed to inform the Court in an amended complaint a) whether his religious beliefs are sincerely held, and b) how the alleged acts or omissions of prison officials substantially burdened his free exercise of his religion. On July 31, 2008, plaintiff complied with those instructions by filing an Amended Complaint (Docket # 5) and an Affidavit in Support of Plaintiff's Religious Sincerity (Docket # 9). After review of those submissions, Claim 1 will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

### I. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be grated is determined by the "familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F.Supp. 2d 641, 642 (E.D.Va. 1998). To survive such a motion, a complaint must contain enough

---

[1] Section 1915A provides:

(a) **Screening.** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
    (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

allegations of fact "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). In evaluating "plausibility," the court may not rely on mere "labels and conclusions" or plaintiff's "formulaic recitation" of the elements of a particular cause of action. Id. at 1965. Instead, the factual allegations must be enough to raise "a right to relief above the speculative level." Id. Where a plaintiff fails to "nudge [] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. at 1974 (emphasis added).

Additionally, a court may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F.Supp.2d 593, 596 (E.D.Va. 2004) (citing 5A Charles A Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1990)), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995)). Moreover, where a conflict exists between the "bare allegations" of the complaint and any attached exhibit, the exhibit prevails. Gulf Ins. Co., 313 F.Supp.2d at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)).

## II. Background

In the initial complaint and accompanying exhibits (Docket # 1), plaintiff states that he was placed on NCC's "Ramadan Fasting list for Muslims" on August 7, 2007. On or around September 20, 2007, plaintiff's name was removed from the list. Based on the exhibits appended to the complaint, it appeared that plaintiff was removed from the list because he refused two of the "Ramadan trays" provided to him. Plaintiff asserts that, subsequently, he filed a variety of grievances and informal complaints concerning his removal from the list, to no avail.

In the amended complaint (Docket # 5), plaintiff clarifies that he refused one pre-dawn "Ramadan tray" as an exercise of religious principle. Specifically, he explains that Islam encourages

all Muslims not to be wasteful of food and to observe self-discipline, so he "respectfully" suggested to the Nottoway staff that it would be wise and "unwastefull" not to provide him with an additional tray of food on the three days during Ramadan when he worked in the institutional kitchen. On the second occasion, plaintiff refused an evening tray and asked to be provided with a different tray "that did not smell like animal feces." He explained to the officer that he did not wish to be removed from the Ramadan feeding list, he only wanted an edible meal, and he apologized for any misunderstanding, but defendant nonetheless responded in writing that plaintiff's name would not be returned to the list. Plaintiff asserts that defendant thereby "put substantial pressure on" him, because after his name was removed from the Ramadan list plaintiff would have had to go to the mess hall during daylight hours, which is strictly prohibited by his faith. He became nauseous and dizzy and developed diarrhea, and after several days of feeling "extremely weak" plaintiff was "forced by defendant to abandon the fast completely." Plaintiff's institutional grievances regarding this incident, including requests to be placed back on the Ramadan feeding list, were all denied. [2]

Also in response to the Court's Order of June 27, 2008, plaintiff has submitted an affidavit in support of his religious sincerity. (Docket # 9) Plaintiff attests that he has been a devout Sunni Muslim since 1990, and completed the Ramadan fast for eighteen (18) years prior to 2008. He abandoned his birth name as a declaration of his sincere commitment to Islam, he had an Islamic

---

[2] In his response to plaintiff's Level I grievance, the warden of the institution stated in part: "Investigation reveals that you admitted to eating some of your meals in the Mess Hall while you were working. According to Feed Service staff you were assigned to the Mess Hall during Ramadan and you worked during the early morning hours. This would place you in the Mess Hall during the preparation of the pre-dawn Ramadan meal. In your Informal Complaint you stated that if you consumed your meal it would be a waste of money to consume the one brought to your cell. If you were concerning [sic] with saving money you would have notified the officer that you already ate your meal and not to prepare an additional meal for the building." Compl. Att. 1.

wedding to a Muslim woman in 1993, and they have raised their four children according to the Muslim faith. Plaintiff is an active member of the Muslim community of Tidewater, and he has filed an Islamic burial plan with prison authorities to ensure that upon his death, he will be interred in strict accordance to Muslim law.

## IV. Analysis

Inmates retain protections under the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S.Const. amend I.; see Cruz v. Beto, 405 U.S. 319, 322 (1977). To state a free exercise claim under the First Amendment, plaintiff must allege facts sufficient to show (1) that he holds a sincere belief that is religious in nature and (2) that prison regulations impose a substantial burden on his right to free exercise of religion. Hernandez v. Comm'r., 490 U.S. 680, 699 (1989). The Supreme Court has defined "substantial burden" in a variety of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981), and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion ... on the other," Sherbert v. Verner, 374 U.S. 398, 404 (1963). However, inmates' constitutional rights must be evaluated within the context of their incarceration, and the Supreme Court has long cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration." Procunier v. Martinez, 416 U.S. 396, 405 (1974). Accordingly, courts must afford deference to prison officials in their oversight and coordination of the prison and its many aspects, and this deference is achieved in part through the application of a reasonableness test that is less restrictive than the test ordinarily used to evaluate alleged

5

infringements of fundamental constitutional rights. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turney v. Safley, 482 U.S. 78, 84 (1987). A prison regulation that abridges an inmate's constitutional rights is "valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

Under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the government is prohibited from taking action that imposes a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of that burden furthers a "compelling governmental interest" by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). Although the RLUIPA does not define the term "substantial burden," the United States Court of Appeals for the Fourth Circuit has held that, under the RLUIPA, a "substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas, 450 U.S. at 718). Although the RLUIPA forbids court inquiry into the question of whether a particular belief or practice is "central" to a prisoner's religion, 42 U.S.C. § 2000cc-5(7)(A), only beliefs or practices that are both sincerely held and rooted in religious belief fall under the protection of the RLUIPA. See Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13 (2005) (noting that under the RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a request for accommodation, is authentic" and whether his "professed religiosity" is "sincere").

At this juncture, it is apparent that plaintiff's claim 1 fails to state a claim for relief under either the First Amendment or the RLUIPA. Both of those offer protection only to sincerely-held religious beliefs or practices, and based upon plaintiff's statements in his affidavit, the Court accepts

as true the sincerity of his commitment to the Muslim faith and its practices. However, plaintiff has failed to show that the defendant's adherence to institutional policy in removing him from the Ramadan fasting list after he refused two Ramadan trays constituted a substantial burden on his right to the free exercise of his religion. Plaintiff admits that he was offered both pre-dawn and post-sunset meals during Ramadan, in accordance with the tenets of his faith, and that he chose to reject two of those meals for reasons of his own. In the context of orderly prison administration, Procunier, 416 U.S. at 405, it is entirely reasonable for an institution to enforce a rule that inmates who twice refuse religious meals that they previously requested will no longer be served the special meals. O'Lone, 482 U.S. at 349. Likewise, it is entirely reasonable that once an inmate's religious meals have been terminated for that reason, the institution may refuse to reinstate his receipt of the meals despite the inmate's request or demand that it do so. It takes little imagination to envision the difficulties prison authorities would face if inmates were allowed to choose which Ramadan trays they might choose to eat and which they would reject if such restrictions did not exist, so deference to institutional policy is clearly warranted in this case.

Moreover, despite plaintiff's attempts portray his abandonment of the Ramadan fast as acquiescence to substantial pressure placed on him by the defendant's adherence to such institutional policy, in fact plaintiff's behavior modification was entirely of his own choosing. Plaintiff admittedly received Ramadan meals and admittedly twice rejected them, so he cannot now be heard to complain that his alleged inability to participate in the Ramadan fast was attributable to pressure, substantial or otherwise, placed upon him by defendant. Cf. Lovelace, 472 F.3d at 187. To the extent that plaintiff might argue that one of the meals he declined "smelled like feces" and was inedible, it is established that allegations of isolated instances of spoiled prison food are insufficient to state a

cognizable federal claim. Bedell v. Angelone, No. 2:01cv780, slip op. at * 14 (E.D. Va. Oct. 3, 2003).

Lastly, it is noted that in the initial complaint, plaintiff asserted that the defendant's refusal to reinstate his name on the Ramadan fasting list was done in retaliation for his verbal complaints and grievances. The amended complaint contains no allegations of a retaliatory motive, so plaintiff apparently elected to abandon that portion of his first claim. However, even if plaintiff did intend to continue to press his retaliation allegations, it is apparent that he has stated no claim. Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) cert. denied, 514 U.S. 1022 (1995). To succeed on such a claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Thereafter, plaintiff must demonstrate that he suffered some adverse impact or actual injury. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). Additionally, an inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord McDonald v. Hall, 610 F.2d 16, 18-19 (1st Cir. 1979); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); accord Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring). The instant complaint contains nothing more than a bare allegation of retaliation, which is insufficient to support § 1983 relief. Adams, 40 F.3d at 75.

Under these circumstances, plaintiff has failed to state a claim for violation of his rights under either the First Amendment or the RLUIPA, and as with Claims 2 and 3, Claim 1 of this complaint will be dismissed for failure to state claim.

Accordingly, it is hereby

ORDERED that claim 1 be and is DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff is advised that, pursuant to 28 U.S.C. § 1915(g),[3] the dismissal of this complaint may affect his ability to proceed in forma pauperis in future civil actions; and it is further

ORDERED that the Clerk record this dismissal for purposes of the Prison Litigation Reform Act.

To appeal, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. See Fed. R. App. P. 4(a). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court.

---

[3] 28 U.S.C. § 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The Clerk is directed to send a copy of this Order to plaintiff and to close this civil case.

Entered this 23rd day of February 2009.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia